This is a child-support-modification case.
Donna Lynn Popwell McCarthy ("the mother") and Arthur J. Popwell ("the father") *Page 1157 
were divorced on February 28, 1985. A son was born of the marriage in 1983. In 1989, the father was awarded primary physical custody of the parties' son and the mother received visitation. The mother was ordered to pay $57 per month in child support and to maintain medical insurance for the son. On June 20, 2002, the father moved for a modification of child support, requesting postminority educational support for the son, who had not reached the age of 19, although he had started college in the fall of 2001. He requested, among other things, that the court order the mother to pay one-half of the son's expenses, for tuition, room, board, transportation, books, and materials while the son attended college. The mother timely answered, claiming that she was without sufficient estate, earning capacity, or income to provide the requested postminority educational support. Following an ore tenus proceeding in which only the father testified, the court, on February 11, 2003, entered the following order on the case action summary sheet:
 "Case called on [issue of postminority educational] support, testimony taken, [u]pon hearing the evidence and testimony on issue of [postminority educational] support for the parties['] son who is attending college in Memphis, Tenn. Court upon hearing the testimony requires the mother, Donna Lynn Popwell McCarthy, to pay [postminority educational] support in the sum of $280.00 per month, commencing 3-1-03, and continuing each month so long as the parties['] son is pursuing his college degree and maintaining at least a C [a]verage."
No postjudgment motions were filed. The mother appeals.
The mother argues that the trial court erred in requiring her to pay postminority educational support without first considering the financial resources of both parents. She contends that, because the record is silent in regard to her financial resources, the court impermissibly awarded postminority educational support. We agree.
 "[Ex parte] Bayliss, [550 So.2d 986 (Ala. 1989),] clearly specifies those factors that shall, and those that may, be considered by the trial court when it is deciding whether to order support for postminority college education. In an award of postminority educational support for a child of divorced parents, the trial court `"shall consider all relevant factors that shall appear reasonable and necessary, including primarily the financial resources of the parents and the child and the child's commitment to, and aptitude for, the requested education."' A.L. v. B.W., 735 So.2d 1237, 1239 (Ala.Civ.App. 1999); Thompson v. Thompson, 689 So.2d 885, 887
(Ala.Civ.App. 1997) (quoting Ex parte Bayliss, 550 So.2d 986, 987 (Ala. 1989)). The court suggested that trial courts also should consider `the standard of living that the child would have enjoyed if the marriage had not been dissolved and the family unit had been preserved and the child's relationship with his parents and responsiveness to parental advice and guidance.' Id. at 987. The trial court must also determine if the noncustodial parent has `sufficient estate, earning capacity, or income to provide financial assistance without undue hardship.' Thrasher v. Wilburn, 574 So.2d 839, 841
(Ala.Civ.App. 1990). Undue hardship does not imply the absence of personal sacrifice, because many parents sacrifice to send their children to college. Id."
Penney v. Penney, 785 So.2d 376, 378-79 (Ala.Civ.App. 2000).
The father presented some evidence of his financial resources. He testified that *Page 1158 
he is a self-employed general contractor and that he manages a hay farm. He estimated that his income for the year 2002 was between $30,000 and $35,000. The father admitted that he owned 25 acres of land upon which a house, a barn, and a hay farm are located. The record indicates that the father had taken out loans in order to assist the son with his college expenses and that he pays for the son's automobile insurance.[1] Despite the parties' stipulation as to the son's aptitude for and commitment to college, the father presented evidence of the son's grades; that evidence indicated that since entering Christian Brothers University in the fall of 2001 the son had maintained full-time status, had maintained above a "C" average, and was majoring in civil engineering. The father also presented evidence of the cost of the son's tuition, books, and fees for the fall 2001, spring 2002, summer 2002, fall 2002, and spring 2003 semesters. He asserted that the son would have to move to campus because the commute from his home to the university was detracting from the son's study time. The father presented similar evidence of the cost of the son's tuition, room, board, books, travel, and expenses if he attended an in-state university with a comparable program.
The father testified that the mother, who resides in Prattville, had not contributed funding toward the son's college expenses. He contended that the mother could work and contribute to the son's college expenses if she so desired. Despite his contention, the father admitted that he had no knowledge of the mother's physical condition or her financial resources. Further, the record does not reflect that any evidence concerning the mother's financial resources was presented to the court. The record does reflect that the father propounded discovery requests to the mother on August 2, 2002, and that he moved to compel answers to that discovery on September 26, 2002. On October 3, 2002, the mother filed a notice of filing answers to discovery. Those answers are not a part of the record. The parties were directed in a pretrial order entered on June 21, 2002, to file completed CS-41 child-support-obligation income-statement/affidavit forms. See Rule 32, Ala. R. Jud. Admin. Those forms are not a part of the record.
By seemingly considering evidence only of the father's financial resources, we cannot say that the court properly awarded postminority educational support in the amount of $280 per month. Therefore, the judgment must be reversed.
The mother next argues that the trial court erred in failing to place sufficient restrictions on its postminority-support award. She alleges that the judgment should be reversed also because it failed to limit the support to a reasonable period.
 "Following Bayliss, this court has held that the trial court must set reasonable limitations on the parent's responsibility for postminority education support, because a failure to do so may impose an undue hardship on the paying parent. These limitations include (1) limiting the support to a reasonable period, (2) requiring the child to maintain at least a `C' average, and (3) requiring that the child be enrolled as a full-time student."
Penney, 785 So.2d at 379 (internal citations omitted). *Page 1159 
Here, the court properly conditioned the award upon the son maintaining a "C" average; however, it failed to limit the award of postminority educational support to a reasonable period and it failed to require the son to maintain full-time status. The judgment is therefore reversed, and the case is remanded for the trial court to enter an order consistent with this opinion.
REVERSED AND REMANDED.
CRAWLEY, THOMPSON, PITTMAN, and MURDOCK, JJ., concur.
[1] The father and the son reside in Hernando, Mississippi; however, the son commutes to college in Memphis, Tennessee. Additionally, the son works for the father, but he does not receive a salary.