392 So.2d 531 (1980)
Audrey K. MATTINGLY
v.
Walter D. CUMMINGS et al.
79-17.
Supreme Court of Alabama.
October 3, 1980.
Rehearing Denied November 7, 1980.
Gary A. Moore of Shores & Moore, Fairhope, for appellant.
Greg F. Jones, Robertsdale, for appellees.
BEATTY, Justice.
This is an appeal from an order of the Circuit Court of Baldwin County denying Audrey K. Mattingly, the mother of a deceased minor, the right to intervene in the wrongful death action initiated by her ex-husband, Walter D. Cummings, the deceased minor's father. We affirm.
The undisputed facts are that in December, 1978 Dwaine L. Cummings, a minor, was struck and killed by an automobile occupied by Paula Dukes and Kenneth W. Clark. On May 21, 1979 Walter Cummings commenced a wrongful death action against the occupants of the car. On July 11, Audrey Mattingly filed an amended motion to intervene in the lawsuit commenced by her ex-husband, alleging that because she was awarded the care, custody, and control of her children in a divorce decree against Cummings, she was allowed, as a matter of right, to intervene in the action. On August 22, the trial judge denied her amended motion to intervene, from which she appeals.
*532 The constitutionality of Code of 1975, § 6-5-391conferring a right to bring a wrongful death action of a minor and its reference to the conditional provisions in § 6-5-390 are at issue. These Code sections state:
§ 6-5-391. Wrongful death of minor.
When the death of a minor child is caused by the wrongful act, omission or negligence of any person, persons or corporation, his or their servants or agents, the father, or the mother in cases mentioned in section 6-5-390, or, if the father and mother-are both dead or if they decline to commence the action, or fail to do so, within six months from the death of the minor, the personal representative of such minor may commence an action, and in any case shall recover such damages as the jury may assess; provided, that an action by any one of them for the wrongful death of the minor shall be a bar to another action either under this section or under section 6-5-410. (Code 1876, § 2899; Code 1886, § 2588; Code 1896, § 26; Code 1907, § 2485; Code 1923, § 5695; Code 1940, T. 7, § 119.)
§ 6-5-390. Injury to minor child.
A father or, in case of his death or desertion of his family, his imprisonment for a term of two years or more under a conviction for crime, of his confinement in an insane hospital or if he has been declared of unsound mind, the mother may commence an action for an injury to a minor child, a member of the family. (Code 1852, § 2135; Code 1867, § 2531; Code 1876, § 2898; Code 1886, § 2587; Code 1896, § 25; Code 1907, § 2484; Code 1923, § 5694; Code 1940, T. 7, § 118.)
When read together, these two sections provide that the father shall have the primary right to commence an action for the wrongful death of his minor child, and the mother has a secondary right to do so. Her right to initiate the action is contingent upon the father's inability to do so on account of his death, desertion, imprisonment, or insanity. Although that priority has been recently amended, effective July 19, 1979, nevertheless the original section was in effect when this cause of action arose.
Mrs. Mattingly contends that these statutes, creating gender based classifications, violate the Fourteenth Amendment of the United States Constitution and Article I of the Alabama Constitution, because they deny the mother a right equal to the father's to bring an action for the wrongful death of a minor child without any substantial justification for doing so. Mr. Cummings asserts that the statutes are constitutional because the father is primarily liable for the support and maintenance of his minor children; therefore, the father should be granted the primary right to recover damages from a wrongful death action of his child. Relying upon our decision in Jones v. Jones, Ala., 355 So.2d 354 (1978), that the mother's conditional right to bring a wrongful death action is constitutional, the lower court found that Mrs. Mattingly had no standing to intervene in the wrongful death action because the child's father had previously filed the lawsuit.
In Thorne v. Odom, Ala., 349 So.2d 1126 (1977), and Jones v. Jones, Ala., 355 So.2d 354 (1978), both cases having involved actions for the wrongful death of minor children, this Court upheld the classification establishing the father's conditional priority to maintain the action and receive any damages awarded. We quote from Jones, supra at 355-6:
It has long been established by the legislature that, as between the two parents, the father has the primary duty to support and maintain the minor children of the parties. It is free, therefore, to provide that the parent with this primary obligation is entitled to any damages recovered as a result of injury to or death of a minor child.
The appellant next argues that the legislation is invalid under the Constitution of the United States and the State of Alabama, because it discriminates against mothers of minor children. This argument was advanced and rejected in the recent case of Thorne v. Odom, 349 So.2d 1126, 1128 (Ala.1977), where this court said:

*533 "Initially, we hold that the trial court's order declaring Title 7, § 118 unconstitutional was erroneous. Contrary to his finding, that statute does not give the father the absolute right over the mother to file such an action, but a conditional right as the remainder of our opinion will show. Additionally, we disagree that the statute imposes an arbitrary distinction. Under the Fourteenth Amendment to the United States Constitution, states may treat different classes of people differently when the classification rests upon a fair and substantial relation to the object of the legislation. Montgomery County v. Walsh, 274 Md. 502, 336 A.2d 97 (1975); Royster Guano Co. v. Virginia, 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920). The object of § 118 is to provide a right of action for the parent's damages for loss of services, expense of treatment, etc. for the child's injury. Section 119, by the same token, allows a right of action in cases of wrongful death. The classification imposed by § 118 is not arbitrary, because the legislature has recognized that, between the two parents, the father has the primary and continuous duty to support and maintain his minor children reasonably according to his means. Thomason v. Thomason, 53 Ala.App. 206, 298 So.2d 627 (1974); Brock v. Brock, 281 Ala. 525, 205 So.2d 903 (1967); Stovall v. Johnson, 17 Ala. 14 (1849). This continuing obligation gives the father the priority in receiving any damages because of the injury or death of the child."
Having given careful attention to the appellant's arguments, nevertheless we adhere to the views this Court expressed in those cases.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C. J., and MADDOX and ALMON, JJ., concur.
FAULKNER, JONES and EMBRY, JJ., dissent.
SHORES, J., recused.
FAULKNER, Justice (dissenting).
The Court was called upon to reconsider the prior holding in Jones v. Jones, 355 So.2d 354 (Ala.1978), and to determine that the wrongful death statute, conferring a conditional right upon the mother to bring the action, yet conferring an absolute right upon the father, violates the equal protection clauses of the United States and Alabama Constitutions because it creates arbitrary and capricious gender based classifications. It is after careful reflection and deliberation, that I would hold that the gender based classifications created in §§ 6-5-391 and 6-5-390 are unconstitutional because they deny equal protection of the law without any substantial relationship to the intendment of the wrongful death statute.
The threshold determination to this conclusion is which of the three equal protection tests espoused by the United States Supreme Court applies to this action. I recognize that the traditional rational basis test is typically invoked when the statute under review relates to socioeconomic legislation. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Railway Express Agency, Inc. v. New York, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949). Under this test the regulation must meet minimal judicial scrutiny so that the classification is rationally and reasonably related to the purpose for which the statute was created.
From the skeleton of this test, two other tests have been carved out. The compelling state interest test, when the statute is strictly construed, is applicable when fundamental rights have been encroached upon, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), and when suspect classifications have been created. Only three classes have been declared to be suspect, those with reference to race, alienage, and religion. Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (race); Examining Board of Engineers, Architects and Surveyors v. Flores De Otero, *534 426 U.S. 572, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1976); Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) (alienage); Hunter v. Erickson, 393 U.S. 385, 89 S.Ct. 557, 21 L.Ed.2d 616 (1969) (religion). It is well implanted within the minds of jurists that, to date, gender based classifications have been given the elevated status of a suspect classification by only a plurality of the Supreme Court. Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). Therefore, it is understood that generally the compelling state interest test is not employed in these instances.
The third, nascent, testthe substantial relationship testhas received widespread acceptance for use in the area of gender based classifications. Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). Under this test the classifications must be greater than rationally related to the purpose for which the statute was created; these classifications must be substantially related to the furtherance of the legislative objective. The judicial review must be more than minimal and less than strict. Craig. I am not yet ready to hold that sex is a suspect classification, nor do I feel comfortable giving minimal scrutiny to gender based classifications. Therefore, with deference to precedents established, I will apply the substantial relationship test to the statutory classifications codified in our wrongful death statute of a minor.
Having made the threshold determination to employ the substantial relationship test, I now turn to the purpose of the wrongful death statute and ascertain whether the gender based standing to sue classifications advance that objective. Sections 6-5-391 and 6-5-390, respectively, create distinct and separate causes of action. McNamara v. Logan, 100 Ala. 187, 14 So. 175 (1893). Section 391 deals with a cause of action only for the wrongful death of a minor; the latter section deals only with a cause of action for the injury of a minor. These two sections do enmesh, however, only regarding the contingencies delineated in § 390 as to when the mother is given the right to bring the cause of action under either section.
The types of damages recoverable under each section are different. Section 390 provides for the recovery of loss of the child's labor, medical expenses, and the value of the parent's services in caring for the child when the parent loses time from work. Smith v. Richardson, 277 Ala. 389, 171 So.2d 96 (1965). Punitive damages are not recoverable for the injury of a minor, Smith.
By contrast, our wrongful death statute is solely penal in nature and compensatory damages are not recoverable. Eich v. Town of Gulf Shores, 293 Ala. 95, 300 So.2d 354 (1974). Nettles v. Bishop, 289 Ala. 100, 266 So.2d 260 (1972). The stated purpose of our wrongful death statute is to punish wrongful conduct and to deter future similar conduct, Nettles, and the amount recovered is not dependent upon the amount of the loss sustained by the victim's survivors. The jury's assessment of the damages is measured by the enormity of the wrong, Crenshaw v. Alabama Freight, Inc., 287 Ala. 372, 252 So.2d 33 (1971), and the culpability of the wrongdoer. Louisville & N. R. R. v. Cross, 205 Ala. 626, 88 So. 908 (1921).
Therefore, I disagree with the majority's reaffirming the language in Jones, where the Court stated:
The object of § 118 [now § 6-5-390] is to provide a right of action for the parent's damages for loss of services, expense of treatment, etc. for the child's injury. Section 119, [now § 6-5-391] by the same token, allows a right of action in cases of wrongful death. (emphasis supplied).
It is not "by the same token" that the "object" of the wrongful death statute is to provide compensation for loss as is the design of the injury statute. Similarly, it is not by the same token that the injury statute is punitive in nature as is the wrongful death statute. Notwithstanding the overlap in these two sections regarding the mother's contingent right to bring the action, these two sections were not enacted to further the same purpose.
From the premise that the purpose of the wrongful death statute is penal in nature, I next address the issue of whether the priority *535 classifications, incorporated by reference in the wrongful death statute from the injury statute, are substantially related to the attainment of this penal object. It is asserted by Cummings that the classifications are substantially related to the object of the statute because it is the father who is primarily liable for the support and maintenance of his minor children; therefore, it is the father who should be granted this superior standing to sue for the wrongful death of his children. Cummings relies upon the Court's language reprinted in Jones, from Thorne:
The classification imposed by § 118 [now § 6-5-390] is not arbitrary, because the legislature has recognized that, between the two parents, the father has the primary and continuous duty to support and maintain his minor children reasonably according to his means. Thomason v. Thomason, 53 Ala.App. 206, 298 So.2d 627 (1974); Brock v. Brock, 281 Ala. 525, 205 So.2d 903 (1967); Stovall v. Johnson, 17 Ala. 14 (1849). This continuing obligation gives the father the priority in receiving any damages because of the injury or death of the child. (emphasis supplied). I disagree with the contention that this duty to support is justification for bestowing upon the father a superior right to bring the wrongful death action. There is no substantial relationship between the penal wrongful death statute and the bestowment upon the father of a superior standing to initiate, and recover from, the lawsuit. Perhaps there is a substantial nexus between the priority classifications in § 390 and the compensatory object of the injury statute; but, I cannot find any reason for using sex as a basis for a primary right to commence a wrongful death action when the object of the cause of action is to deter and punish rather than to compensate.
Cummings argues that Mrs. Mattingly does not have standing to raise the constitutional issues or to intervene because she failed to allege in her motion to intervene that she had custody of the child at the time of his death. Her motion is sufficient "to affirmatively show the requisite interest in the pending litigation and facts establishing [her] right to [intervene]." Kennesaw Life & Accident Insurance Co. v. Old National Insurance Company, 291 Ala. 752, 287 So.2d 869 (1974). In her motion she alleges that "she is the mother of Dwaine Louis Cummings, deceased," and that "[a]pproximately fourteen (14) years ago movant and plaintiff were divorced by a decree entered by a Court in the State of California by which decree movant was awarded the care, custody and control of Dwaine Louis Cummings...."
Section 390 does not prescribe that either parent must allege custody as a prerequisite to bring the action. The statute simply sets forth those cases where the father or mother shall bring the action without regard to the parent who has legal custody of the child at the time of death. In fact, the custody issue lends support to my opinion that the statute is unconstitutional; there is no nexus between a penal statute and statutory classifications that permit the father the primary right to initiate the action without regard to whether the father has legal custody of the child.
Cummings' contention that Mrs. Mattingly has no standing to sue because she failed to allege loss of services is likewise unmeritorious because these damages play no part in a claim for wrongful death. Therefore, Mrs. Mattingly is not precluded from raising the constitutional issues on appeal for want of alleging in her motion (1) custody of her child at the time of his death; or (2) loss of the child's services.
Within the past several years, this Court has had the occasion to find some of the gender based statutes unconstitutional when challenged on equal protection grounds. In Peddy v. Montgomery, 345 So.2d 631 (Ala.1977), this Court held that the statute,
limiting the freedom of a married woman to alienate or mortgage her lands, or any interest therein, without the assent and concurrence of her husband, violates the provisions of Article 1, Constitution of 1901, in that it denies to that category of adult landowners rights guaranteed to all *536 other adult landowners by the Constitution and laws of this state.
In Parker v. Hall, 362 So.2d 875 (Ala.1978), this Court held that the statute "which provides that a woman's marriage revokes her Will, is unconstitutional in that it denies equal protection of the law."
Justice Jones, dissenting in Orr v. Orr, 351 So.2d 906 (Ala.1977), opined that "any discrimination as to who may receive alimony, merely because of sex, in my opinion, must be viewed as arbitrary." In Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979), the Supreme Court held the alimony statute unconstitutional because it provided that only men, and not women, shall pay alimony. In that case it was noted that the "old notions" that it is the man's primary responsibility to enter into the marketplace to provide for the essentials of the home while it is the woman's place solely to stay in the home are no longer reasons for gender based statutes. Indeed, a statute which has as its foundation the outmoded precept that the man is the head of the family in all instances "is to ignore the realities of life as we know it." Peddy, supra, at 637.
I do not, in this case, enlist any views on the constitutionality of new § 390, nor do I intimate any expansion of the holding in Orr or express an opinion on the familial roles of men and women. My opinion in the instant case is that Code 1975, § 6-5-391, with its reference to the contingent right to sue in § 390, is unconstitutional only insofar as it grants the father an unconditional superior right to bring a cause of action for the wrongful death of his child, while it grants to the mother a conditional subordinant right to commence the lawsuit. I opine that the gender based classifications do not substantially relate to the penal object of the wrongful death statute.
I would reverse and remand.
JONES and EMBRY, JJ., concur.